Ronald Abramson
David G. Liston
**LEWIS BAACH pllc**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 826-7001

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WAG ACQUISITION, L.L.C.**, <br><br>  Plaintiff, <br><br>  v. <br><br> **GATTYÁN GROUP S.à r.l.;** <br><br> **DUODECAD IT SERVICES LUXEMBOURG S.à r.l.;** <br><br> **DUODECAD IT SERVICES USA, LLC;** <br><br> **DOES 1-20**, <br><br>  Defendants. | Civil Action No.: <br><br><br><br><br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> and <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WAG ACQUISITION, L.L.C., for its complaint against Defendants, alleges that Defendants infringe United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839 (the "patents-in-suit") by conduct including without limitation Internet delivery of live interactive video webcam performances in a manner that infringes these patents.  Defendants operate a worldwide network of


live interactive webcam performers and Internet sites.  Defendants' largest web site, livejasmin.com, is one of the most visited Internet sites in the world.

## THE PARTIES

1.  Plaintiff WAG Acquisition, L.L.C. is a New Jersey limited liability company with its principal place of business at 3 Gold Mine Road, Suite 104, Flanders, New Jersey 07836.  Plaintiff operates an Internet broadcasting business based in New Jersey, under the trade name SurferNETWORK.

3.  On information and belief, Defendant GATTYÁN GROUP S.à r.l. ("GG") is a corporation organized under the laws of the Duchy of Luxembourg, with offices at 44, Avenue John F. Kennedy, L-1855 Luxembourg, Grand Duchy of Luxembourg.

4.  On information and belief, Defendant DUODECAD IT SERVICES LUXEMBOURG S.à r.l. ("DD") is a corporation organized under the laws of the Grand Duchy of Luxembourg, with a registered address at 44, Avenue John F. Kennedy, L-1855 Luxembourg, Grand Duchy of Luxembourg, registered in the Luxembourg Trade and Companies Register under the number B 171.358.  On information and belief, Defendant DD owns and operates the domains livejasmin.com and jasmin.com.

5.  On information and belief, Defendant DUODECAD IT SERVICES USA, LLC ("DD-US") is a California, U.S.A. limited liability company with offices at 9701 Wilshire Boulevard, Suite 1000, Beverly Hills, California 90212.  On information and belief, Defendant DD-US operates servers and provides website development and support services, in the United States.

6. On information and belief, Defendants DOE 1 – DOE 20 are entities whose precise identities are unknown to Plaintiff at this time, which operate in concert with Defendants GG, DD, and DD-US in connection with the conduct complained of herein.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## PLAINTIFF'S BUSINESS AND DEVELOPMENTS

9. Plaintiff, operating under the trade name SurferNETWORK, is in the business of providing Internet broadcasting services for live and on-demand audio and video program material. Plaintiff began this business in 1998, and has been one of the leading providers of such services to the terrestrial radio stations and other content providers that comprise its customer base.

10. Early in developing its business, two of Plaintiff's principals, William A. Grywalski, ("Grywalski") and Harry Emerson ("Emerson"), recognized a need that existed in the field of Internet delivery of broadcast media due to the shortcomings in then current Internet streaming technologies. They observed that long startup delays due to "buffering" and frequent program interruptions (sometimes referred to as "jitter") made the experience of trying to listen to or view streaming Internet

content frustrating to the end user, and therefore impractical as a content delivery mechanism. They were interested in making the Internet streaming experience more like radio or television, including the immediacy of having the programming appear to start instantly on demand (e.g., turning on a radio or flipping channels), and continue playing once started without random interruptions.

11. Plaintiff engaged the assistance of a software design engineer, Harold Price ("Price"), to develop solutions for the shortcomings that Grywalski and Emerson saw in the current technology, with respect to streaming media playback performance, as well as other technological issues concerning Internet delivery of broadcast media. Price worked on several aspects of this matter for Plaintiff over the period 1999-2001.

12. Price was aware of the then current approach to streaming, which attempted to overcome streaming transmission delays and jitter by a variety of techniques, including, for example, establishing a content buffer of 20-seconds or so in duration, on the receiving (user or "client") end of the communication, within the client's media player or media player browser plugin. After the user selected (e.g., clicked on) a stream, the player would start filling this buffer at the playback rate and then start playing when the buffer was full. While this method did provide some protection against interruptions for the duration of whatever content was initially buffered, it entailed an undesirable startup delay for "buffering," and provided no means for graceful recovery once the 20 seconds worth of content in the buffer was consumed.

13. Price conceived of solutions to these problems. He built a prototype that implemented one embodiment of those solutions, and he demonstrated that a system according to his new design could overcome the problems put to him by Grywalski and Emerson.

14. Plaintiff and its predecessors in interest filed a number of U.S. patent applications on these solutions, as enumerated below. To date, these applications have resulted in a number of issued U.S. patents, including the patents-in-suit. All of these patent applications were assigned to Plaintiff, or to a predecessor-in-interest of Plaintiff and reassigned to Plaintiff.

15. Plaintiff has been conducting an active, operating business ever since the developments described above, and has actively practiced under the technology taught in the patents-in-suit, from then to the present. Plaintiff has developed commercial arrangements under which it streams content for numerous terrestrial radio stations and content providers in New Jersey, regionally, nationally, and internationally. It also provides a One-Click Royalty Reporter™ for radio stations to report streaming media performance royalty information to SoundExchange (a performing rights organization that collects royalties on the behalf of sound recording copyright owners ), among other services.

16. Despite its successes, Plaintiff's business has been damaged by infringement such as that practiced by the Defendants.

**THE PATENTS-IN-SUIT**

17. United States Patent No. 8,122,141 (the '141 patent") was duly and legally issued on February 21, 2012, for an invention entitled "STREAMING MEDIA

Case 2:14-cv-02832-ES-JAD   Document 1   Filed 05/05/14   Page 6 of 16 PageID: 6

6

BUFFERING SYSTEM."  Plaintiff is the owner by assignment of the '141 patent and owns all rights to recover for past and ongoing infringement thereof.

18.  United States Patent No. 8,327,011 (the '011 patent") was duly and legally issued on December 4, 2012, for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM."  Plaintiff is the owner by assignment of the '011 patent and owns all rights to recover for past and ongoing infringement thereof.

19.  United States Patent No. 8,185,611 (the '611 patent") was duly and legally issued on May 22, 2012, for an invention entitled "STREAMING MEDIA DELIVERY SYSTEM."  Plaintiff is the owner by assignment of the '611 patent and owns all rights to recover for past and ongoing infringement thereof.

20.  United States Patent No. 8,364,839 (the '839 patent") was duly and legally issued on January 29, 2013, for an invention entitled "STREAMING MEDIA DELIVERY SYSTEM."  Plaintiff is the owner by assignment of the '839 patent and owns all rights to recover for past and ongoing infringement thereof.

## DEFENDANTS' ACTIVITIES

21.  Defendants are leading worldwide providers of live, interactive adult webcam streaming video performances over the Internet.  Defendants provide these performances over the site livejasmin.com as well as a number of "Affiliate" sites, co-branded with third parties, which Defendants service by providing the live model streams and delivery and payment infrastructure. Defendants also provide similar services for online interactive experiences with purported psychics, at the site oranum.com.

22. On information and belief, Defendants' live webcam streaming business generates hundreds of millions of dollars in annual revenues. These revenues are derived from consumer payments via credit card for the performances of individual webcam performers, as well as advertising, commercial tie-ins, and other forms of Internet content monetization.

23. Defendants aggressively market their live webcam services to a worldwide audience, including, on information and belief, users in this District, from which Defendants derive substantial revenues.

24. On information and belief, Defendants, through their web site at livejasmin.com, and through other facilities and channels, have recruited a large number of webcam performers in the U.S., Western and Eastern Europe, Asia, Africa, South America, and elsewhere, to form a vast online pornography enterprise of national and international scope. As evidenced by Defendants' ornaum.com web site, Defendants have diversified their portfolio beyond adult entertainment.

25. On information and belief, Defendants' worldwide collection of performers includes numerous New Jersey residents, who perform online over Defendants' infringing services, from New Jersey, using facilities provided by Defendants.

26. Adult streaming media is an extremely high volume business, which is well known as consuming a high percentage of the total bandwidth available on the Internet. Operating in this market requires sophisticated technology and complex infrastructure, paid for by the high revenues that this business generates, as described above.

27.  Success in Defendants' business is highly dependent on fast, smooth, uninterrupted delivery of streaming media content, such as that made possible by Plaintiff's patents.  Defendants derive great value as a result of operating under Plaintiff's patented technology, for which they have not compensated Plaintiff.

28.  Defendants' live webcam performances are streamed to Internet users through server installations under Defendants' ownership or control, registered in the name of DD, and on information and belief, operated at least in part by Defendant DD-US.  The streaming transmissions are targeted to Internet users around the world, on diverse systems, including, without limitation, desktop computers, as well as smartphones and tablets running under various operating systems and environments, including without limitation, as the case may be, Apple® iOS and Android™ mobile operating systems ("Mobile Platforms"); the Windows®, and OS X® desktop operating systems ("Desktop Platforms"), and Safari®, Chrome™, Firefox®, Opera™, Internet Explorer®, and other Internet browsers ("Browser Platforms"), as well as Defendants' own Docler Browser, provided by Defendant DD.

29.  Defendants' servers are configured to stream Defendants' live webcam performances and other video streams over a variety of delivery technologies to, *inter alia*, the smartphones, tablets, media players, and other Mobile Platforms, Desktop Platforms, and Browser Platforms, as described above, in a manner that infringes Plaintiff's patents.  Defendants' Streaming to Mobile Platforms includes, without limitation, sending instructions and/or programs (including without limitation the Docler Browser) to users' mobile devices, that cause the devices to

operate in an infringing manner.  Defendants' streaming to Desktop Platforms and Browser Platforms includes, without limitation, streams delivered via MJPEG and FLV, in a manner that infringes others of Plaintiff's patents.

30.  On information and belief, defendants DOE 1– DOE 20 ("Doe Defendants") include persons and entities that materially aid and assist in carrying out the infringing acts alleged herein.  The Doe Defendants include without limitation operators of "Affiliated" web sites that are cosmetically modified versions of livejasmin.com or others of Defendants' webcam sites, carrying the branding of such Doe Defendants.  Defendants provide a program called "Adult Webmaster Empire" to offer "white labeled" versions of their sites to such operators.  The Affiliate site operators participate in revenue split deals with the other Defendants named herein, under which they take a substantial share in revenues derived from infringing Plaintiff's patents.

31.  As a consequence of the above described activities, Defendants have infringed and are continuing to infringe Plaintiff's patents, including at least the patents-in-suit.

### COUNT I: INFRINGEMENT OF THE '141 PATENT

32.  Plaintiff repeats and realleges the allegations of paragraphs 1-31 above as if fully set forth at length herein.

33.  Defendants have and continue to directly and indirectly infringe at least claims 1-8, 10-17, 19-21, 23, and 24-28 of the '141 patent by the manner in which they provide streaming performances over the Internet.  Such infringement occurs as a result of Defendants' streaming of live performance webcam video to Mobile

Platforms, in which Defendants perform, use, or provide, without limitation, methods and systems for the following:

- preparing the streaming media program content for transmission by assigning serial identifiers to sequential media data elements comprising the program,

- providing a server programmed to receive requests from user system for media data elements corresponding to specified serial identifiers, and to send the specified media data elements to the user systems responsive to said requests, at a rate more rapid than the rate at which said streaming media is played back by the user,

- providing programming that implements, invokes, and/or incorporates a media player on the Mobile Platform that operates by maintaining a record of the last data element it has received, and by transmitting requests to the server to send one or more data elements as so prepared by Defendants, specifying the identifiers of the data elements, as said media player requires for uninterrupted playback.

As a consequence of said acts, and variations thereof as recited in the identified claims, all of which are performed or provided by Defendants, Defendants are liable for their infringement of the '141 patent pursuant to 35 U.S.C. §§ 271(a)-(c).

34.  Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

35.  Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT II: INFRINGEMENT OF THE '011 PATENT

36. Plaintiff repeats and realleges the allegations of paragraphs 1-35 above as if fully set forth at length herein.

37. Defendants have and continue to directly and indirectly infringe at least claims 1-4 the '011 patent by, without limitation, their development, distribution, use, sale, and offering for sale, alone and/or in concert with others, of apparatus and articles, for:

- requesting from Defendants' servers a predetermined number of media data elements, requesting the elements by serial identifier,
- receiving media data elements sent by Defendants' servers responsive to said requests,
- implementing a buffer manager to store media data elements received from Defendants' servers and maintain a record of the serial number of the last media data element received,
- playing the media data elements sequentially from the buffer,
- repeating such requests so as to maintain a pre-determined number of media data elements in the buffer.

As a consequence of said acts, and variations thereof as recited in the identified claims, all of which are performed or provided by Defendants, Defendants are liable for their infringement of the '011 patent pursuant to 35 U.S.C. §§ 271(a)-(c).

38. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

39. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in

damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

### COUNT III: INFRINGEMENT OF THE '611 PATENT

40.  Plaintiff repeats and realleges the allegations of paragraphs 1-39 above as if fully set forth at length herein.

41.  Defendants have and continue to directly and indirectly infringe at least at least claims 1-6, 8-10, and 12-17 of the '611 patent, in their manner of providing streaming performances over the Internet.  Such infringement occurs, *inter alia*,  as a result of Defendants' streaming of live performance webcam video to Desktop Platforms, Mobile Platforms, and Browser Platforms, in which Defendants perform, use, or provide, without limitation, methods and systems for the following:

- sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer, configuring the elements so that the amount of the initial elements and the initial sending rate are sufficient for the user system to begin playing back the streaming media while the user buffer continues to fill,

- thereafter, sending further streaming media data elements to the user system at about the playback rate, which matches the rate at which the server buffer is filled from the live performance, and where the further streaming data elements are received by the user's computer at about the playback rate if there are no interruptions in the transmission of media data between the server and the user's computer, and

- where the server has determined that such an interruption has occurred, sending streaming media elements to the user system at a sending rate more rapid than the playback rate, to refill the user buffer.

As a consequence of said acts, and variations thereof as recited in the identified claims, all of which are performed or provided by Defendants, Defendants are liable for their infringement of the '611 patent pursuant to 35 U.S.C. § 271(a)-(c).

42. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

43. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology. Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT IV: INFRINGEMENT OF THE '839 PATENT

44. Plaintiff repeats and realleges the allegations of paragraphs 1-43 above as if fully set forth at length herein.

45. Defendants have and continue to directly and indirectly infringe at least at least claims 1-5, 7-12, 14-19, and 21 of the '839 patent, in their manner of providing streaming performances over the Internet. Such infringement occurs, *inter alia*, as a result of Defendants' streaming of live performance webcam video to Desktop Platforms, Mobile Platforms, and Browser Platforms, in which Defendants perform, use, or provide, without limitation, methods and systems for the following:

- loading a server buffer with streaming media data elements,

- sending an initial amount of streaming media data elements to the user system at an initial sending rate more rapid than the playback rate, such that the user system can begin playing back the program while the user buffer continues to fill,

- thereafter, sending further streaming media data elements to the user system at about the playback rate and filling the server buffer at about the playback rate, where the further streaming data elements are received by the user's computer at about the playback rate if there are no interruptions in the transmission of media data between the server and the user's computer,

- detecting interruptions wherein media data elements have been delayed or not received by the user system, and sending unsent streaming media data elements in the server buffer at a sending rate more rapid than the playback rate.

As a consequence of said acts, and variations thereof as recited in the identified claims, all of which are performed or provided by Defendants, Defendants are liable for their infringement of the '839 patent pursuant to 35 U.S.C. § 271(a)-(c).

46. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

47. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT V: WILLFUL INFRINGEMENT AND KNOWING INDUCEMENT

48.  Plaintiff repeats and realleges the allegations of paragraphs 1-47 above as if fully set forth at length herein.

49.  The filing of this action for infringement constitutes notice to Defendants of such infringement, pursuant to 35 U.S.C. § 287.  Defendants were also simultaneously notified by a letter of their infringement.  At least upon receipt of such notices Defendants should have understood that there was an objectively high likelihood that their actions thereafter constituted, and were inducing and contributing to, patent infringement.

50.  Defendants' continued infringement at least after such notice is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

51.  Plaintiff demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WAG ACQUISITION, L.L.C. requests an entry of judgment in its favor and against Defendants as follows:

a) Declaration that Defendants have each infringed United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839;

b) Declaration that each of Defendants' infringement has been willful, and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284, jointly and severally against the Defendants;

c) Permanently enjoining Defendants, their officers, directors, employees, agents, and all those in concert and participation with them from continued infringement of infringed United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839;

d) Awarding the past and future damages arising out of Defendants' infringement of United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839 to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof, jointly and severally against the Defendants;

e) Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law, jointly and severally against the Defendants; and

f) For such other costs and further relief as the Court may deem just and proper.

Dated:  May 5, 2014

RONALD ABRAMSON
DAVID G. LISTON
LEWIS BAACH PLLC
The Chrysler Building
405 Lexington Avenue
New York, NY 10174


By: s/ Ronald Abramson
        Ronald Abramson
Tel: (212) 822-0163


By: s/ David G. Liston
        David G. Liston
Tel: (212) 822-0160

*Attorneys for Plaintiff*