**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WAG ACQUISITION, LLC, | |
| Plaintiff, | Civil Action No. 14-2832 (ES) |
| v. | |
| GATTYÁN GROUP S.à.r.l., *et al.*, | |
| Defendants. | OPINION |

MᴄNᴜʟᴛʏ, Dɪsᴛʀɪᴄᴛ Jᴜᴅɢᴇ

Before the Court are cross-appeals, pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(c), of Magistrate Judge Michael A. Hammer's January 29, 2020 Order (DE 221) denying the motion of Plaintiff WAG Acquisition, LLC to amend its infringement contentions and the motion of Defendant Duodecad IT Services Luxembourg S.à.r.l to amend its answer and invalidity contentions. (DE 223 & 224).[1] For the reasons below, the Court AFFIRMS Magistrate Judge Hammer's January 29 Order.

**I.    Background**

Duodecad operates live web-cam Internet sites for paying customers. WAG alleges that those Internet sites, through their streaming services,

---

[1]  Citations to the record will be abbreviated as follows:

January 29 Op. = Magistrate Judge Hammer's January 29, 2020 Opinion accompanying his order denying both parties motions to amend, DE 220

Duodecad Br. = Duodecad's brief in support of its appeal, DE 223-1

WAG Br. = WAG's brief in support of its appeal, DE 224-1

Duodecad Opp. = Duodecad's brief in opposition of WAG's appeal, DE 226

WAG Opp. = WAG's brief in opposition of Duodecad's appeal, DE 227

infringe a number of WAG's patents—specifically, United States Patent Nos. 8,122,141; 8,327,011; 8,185,611; and 8,364,839 (collectively, "the patents-in-suit"). WAG filed this action for patent infringement on May 5, 2014. (DE 1).

On February 1, 2016, Magistrate Judge Hammer entered a scheduling order in this case, setting the deadline to amend pleadings as December 5, 2016. (DE 70 at 4). Magistrate Judge Hammer amended the scheduling order to extend the discovery deadline three separate times. (DE 103, 122 & 125). But Magistrate Judge Hammer was never asked to, and never did, extend the deadline to amend pleadings. On March 22, 2016, WAG served its infringement contentions, and on June 9, 2016, Duodecad served its invalidity contentions. (January 29 Op. at 2).

More than a year later, on May 24, 2017, the parties submitted a joint letter requesting that Magistrate Judge Hammer intervene to resolve a number of issues, including the parties' desire to amend their pleadings. (DE 126). In Duodecad's portion of the letter, it alleged that, through discovery, it had found out that WAG had failed to disclose to the United States Patent and Trademark Office (the "PTO") that the foundation of the patents-in-suit is "Icecast," which is publicly available software. (*Id.* at 3). As a result, Duodecad sought leave to amend its answer to add a claim of inequitable conduct as an affirmative defense, and sought also to amend its invalidity contentions to add the same claim. In WAG's portion of the letter, it sought leave to amend its infringement contentions. Unlike Duodecad, WAG did not disclose the specific basis for the amendment at that time, stating only that, upon review of Duodecad's confidential source code in February and May 2017, it had discovered a new infringing instrumentality. (*Id.* at 20). It was not until September 2019 that Duodecad was made aware of the specific basis for the amendment. (January 29 Op. at 19). WAG allegedly learned through discovery that Duodecad began to use another infringing instrumentality, "H5Live," in October 2016, over two years after the commencement of this action. (DE 205 at 1).

On November 8, 2019, both parties submitted formal motions to amend their pleadings. (DE 204, 205 & 207 (WAG's submissions); DE 206 & 208

(Duodecad's submissions)). On January 29, 2020, Magistrate Judge Hammer denied both motions to amend because neither party had demonstrated due diligence, as WAG was required to show under Local Patent Rule 3.7, and as Duodecad was required to show under Federal Rule of Civil Procedure 16. (January 29 Op. at 10 & 17). Both parties have filed appeals from that decision. Both appeals are opposed.

## II.   **Legal Standard**

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court. 28 U.S.C. § 636(b)(1)(A). In considering an appeal of a non-dispositive order by a Magistrate Judge, a district court will modify or vacate an order only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A district court's review of a dispositive order is de novo.

Duodecad contends that this Court should review Judge Hammer's decision for clear error, characterizing his order as non-dispositive. (Duodecad Br. at 4; Duodecad Opp. at 4). WAG has not specified a standard of review, but has not disputed that the standard is one of clear error. Because "[a] motion for leave to amend is not among those matters listed as dispositive" under § 636(b)(1)(A), it is a "nondispositive" motion, decisions on which are reviewed by district courts for clear error. *Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998).[2]

"A Magistrate Judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the

---

[2]   Neither party has claimed that this appeal presents the scenario in which a Magistrate Judge's decision on "a motion to amend . . . in practice result[ed] in dismissal." *Kenny v. United States*, 489 F. App'x 628, 630 n.2 (3d Cir. 2012). The standard of review in such a scenario is a closer question. Here, the Magistrate Judge's ruling was not akin to a motion to dismiss, as it might be where amendment is denied on grounds of futility; rather it was a matter of case management and enforcement of deadlines, a function that lies firmly within the Magistrate Judge's sound discretion.

entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009); *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A [ruling] is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp.2d 162, 164 (D.N.J. 1998). The appealing party bears the burden of establishing that the Magistrate Judge's decision was clearly erroneous or contrary to law. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

## III.   Discussion

### A.   Duodecad's Motion to Amend

Duodecad appeals from Magistrate Judge Hammer's denial of its motion to amend its answer and invalidity contentions.[3] As stated above, Duodecad moved to amend its answer and invalidity contentions well after December 5, 2016, the deadline for motions to amend pleadings under Magistrate Judge Hammer's Scheduling Order. When a party seeks leave to amend its pleadings after the deadline for amendment has passed, the Court must assess whether the movant has shown "good cause" under Rule 16(b)(4) prior to conducting the more liberal amendment analysis under Rule 15(a)(2). *See Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468–69 (D.N.J. 1990). "[U]nlike Rule 15(a)(2) and its focus on the question of prejudice to the non-moving party, Rule 16(b)(4) focuses on the moving party's burden to show due diligence." *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Indeed, Rule 16(b)(4) requires the movant to show that it acted

---

[3]     Duodecad had also sought to add a claim of inequitable conduct under a theory that WAG failed to disclose to the PTO a "Chen" prior art document. Magistrate Judge Hammer denied the amendment, and Duodecad has offered no argument on appeal that that ruling was erroneous. This Opinion therefore will not review that aspect of Magistrate Judge Hammer's decision. *See Geoul Lee v. Won II Park*, 720 F. App'x 663, 666 (3d Cir. 2017) ("First, it is the responsibility of neither the District Court nor this Court to make the parties' argument for them . . . .").

4

with due diligence in seeking the relevant information and moving to amend. *See Premier Comp Sols., LLC v. UPMC*, No. 19-1838, 2020 WL 4668235, at *2 (3d Cir. Aug. 12, 2020).

Magistrate Judge Hammer found that Duodecad failed to demonstrate that it acted with due diligence in moving to amend. (January 29 Op. at 10). Duodecad, Magistrate Judge Hammer explained, was aware of Icecast's existence through WAG's March 2016 document production (*id.* at 9), page nine of which noted that the "ICECAST server is being used as a model of the Geode Distribution Server" (DE 211-4 at WAG0000009). Nearly a year passed; it was not until February 2017 that Duodecad pursued discovery to uncover facts relevant to assertion of a claim of inequitable conduct, and it was not until May 24, 2017 that it sought amendment of its pleadings. (*Id.* at 10).

Duodecad argues that Magistrate Judge Hammer should not have measured its diligence against the date of WAG's first document production because it was required to seek additional discovery before amending its pleadings to assert a claim of inequitable conduct. (Duodecad Br. at 4–6). That conclusion follows, says Duodecad, because a claim of inequitable conduct must be pled with particularity under Federal Rule of Civil Procedure 9(b). It had to develop a basis to allege that the patent-holder had "knowledge of the withheld material information" and withheld that information with the "specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009); *see also id.* at 1326 ("'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003))). Duodecad cites several cases within the Third Circuit holding that where, as here, a claimant uncovers facts in discovery relevant to addition of a claim of inequitable conduct, Rule 9(b) requires the claimant, before moving to amend, to confirm such factual allegations through discovery to meet the burden of pleading them with particularity. (Duodecad Br. at 5–9 (citing *In re Certain Consol. Roflumilast*

*Cases ("Roflumilast")*, No. 15-3375, 2017 WL 3816542, at *3 (D.N.J. Aug. 31, 2017); *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 578 (D. Del. 2009); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003)). Therefore, Duodecad argues, it was unable to move to amend its pleadings until after it deposed two individuals: (i) Skip Hanson, a third-party software developer and technical advisor of Harold Price, the alleged inventor of the patents-in-suit; and (ii) Jack Moffitt, a third party who had helped author Icecast's source code. Further, Duodecad argues, because WAG failed to identify as relevant Icecast or the testimony of Mr. Hanson and Mr. Moffitt, as it was allegedly required to do under Federal Rule of Civil Procedure 26, Duodecad was delayed in deposing Mr. Hanson until February 24, 2017, and Mr. Moffitt until April 13, 2017. (*Id.* at 2). Thus, says Duodecad, it should not have been faulted for failing to pursue those depositions earlier.

WAG's response is three-fold. First, WAG argues, notwithstanding Rule 9(b)'s particularity requirement, Duodecad learned nothing from the depositions of Mr. Hanson and Mr. Moffitt that it did not already know from WAG's first document production. (WAG Opp. at 2). Nor did Duodecad learn anything from those depositions that it could not have discovered earlier had it inspected Icecast's publicly available source code, which it did not do until February 15, 2017. (*Id.*). Second, the fact that Rule 9(b) required Duodecad to plead with particularity does not excuse its delay in deposing Mr. Hanson and Mr. Moffitt for approximately a year. (*Id.*). Third, WAG argues that Rule 26 did not require it to disclose the existence of Icecast, Mr. Hanson, or Mr. Moffitt, because "Rule 26 does not require disclosure of information other than what the disclosing party intends to use 'to support its claims or defenses.'" (*Id.* at 3).

Magistrate Judge Hammer's denial of Duodecad's motion to amend was not clearly erroneous or contrary to law.  Judge Hammer closely supervised this case from the beginning, and was familiar with the issues, both procedural and substantive. His judgment about what the parties could and should have done to be considered diligent is entitled to deference.

Although Duodecad needed time to pursue discovery to plead its claim of inequitable conduct with sufficient particularity, Judge Hammer did not commit clear error in finding that it should have pursued that discovery more timely. *See Everplay Installation Inc. v. Guindon*, 471 F. App'x 812, 818 (10th Cir. 2012) (reviewing district court's finding of lack of due diligence as a finding of fact reversible only for clear error); *cf. Arroyo v. United States*, 656 F.3d 663, 667 (7th Cir. 2011) ("The district court's determination of the date that the Arroyos knew that Christian's injuries could have been caused by his doctors, or the date that a reasonably diligent person would have discovered the same, constitutes a factual finding."). WAG's first document production disclosed that Icecast, a publicly available source code, had been used as the "*model*" of the Geode Distribution Server; that should have raised a red flag, motivating Duodecad to immediately pursue discovery regarding a potential claim of inequitable conduct, an infringement defendant's darling which has been called "the 'atomic bomb' of patent law." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (quoting *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, 525 F.3d 1334, 1349 (Fed. Cir. 2008) (Rader, J., dissenting)). "Unlike validity defenses, which are claim specific, inequitable conduct regarding any single claim renders the entire patent unenforceable." *Id.* (internal citation omitted). Duodecad has pointed to no affirmative steps that it took—whether before the assigned District Judge or Judge Hammer—to investigate the inequitable conduct claim prior to the December 5, 2016 deadline to amend pleadings. As that deadline approached, Duodecad failed to take even the minimal step of requesting an extension. Duodecad offers no excuse for that lapse. Finally, Duodecad points to no impediment to its pursuit of this supposedly critical discovery sooner than February 2017. Even if WAG was required under Rule 26 to disclose the existence of Icecast, Mr. Hanson, or Mr. Moffitt, its failure to do so would not excuse Duodecad's failure to pursue discovery through other channels. And it should be noted that, even without WAG's assistance, Duodecad *was* aware of Icecast and *did* discover (and

depose) Mr. Hanson and Mr. Moffitt. I agree with Judge Hammer's conclusion that Duodecad has made no persuasive showing that, had WAG disclosed the existence of those two witnesses, the motion to amend would have been filed sooner.

Duodecad's cited cases, in which courts have been more forgiving of movants' belated motions to add claims of inequitable conduct, are inapposite. For one, the applicable standard of review, which asks whether Magistrate Judge Hammer's denial of Duodecad's motion was clearly erroneous, limits this Court's ability to rely on those cases. That is because those courts assessed the motions to amend in the first instance, not on appeal under the more deferential clear-error standard. *See Collins v. Alco Parking Corp.*, 448 F.3d 652, 658 (3d Cir. 2006) (reasoning that two cited "cases [we]re distinguishable" in part because "neither case applied the plain error standard of review"); *United States v. Conley*, 4 F.3d 1200, 1204 (3d Cir. 1993) (explaining that "the standard of review can be outcome determinative"). For another, those cases involved instances where, although the movants did not timely move to amend, they had been more energetic than Duodecad in pursuing discovery after learning the initial facts suggesting a potential claim of inequitable conduct. *See Roflumilast*, 2017 WL 3816542, at *3 (eight months to conduct first deposition after learning first batch of information relevant to the inequitable conduct claim); *ICU Med., Inc.*, 674 F. Supp. 2d at 578 (four months to conduct necessary depositions after learning information relevant to the inequitable conduct claim); *Enzo Life Scis., Inc.*, 270 F. Supp. 2d at 487, 489 (nine months to conduct necessary depositions after commencement of the lawsuit).

Duodecad did not timely pursue discovery, and it has not offered a valid excuse for its failure to do so. So this Court cannot say, with a firm conviction, that Magistrate Judge Hammer erred, clearly or otherwise, in concluding that Duodecad was not diligent in pursuing discovery and moving to amend.

### B.    WAG's Motion to Amend

WAG appeals from Magistrate Judge Hammer's denial of its motion to

amend its infringement contentions.[4] That issue is governed primarily by the Local Patent Rules, which expressly "apply to all civil actions filed in or transferred to this Court which allege infringement of a patent." L. Pat. R. 1.2. "Local Patent Rule 3.6 requires *ultra* early disclosure of infringement and invalidity contentions." *Sanofi-Aventis v. Barr Labs., Inc.*, 598 F. Supp. 2d 632, 637 (D.N.J. 2009). Similarly, pursuant to Local Patent Rule 3.7, "[a]mendment of any contentions . . . required to be filed . . . pursuant to these Local Patent Rules may be made *only* by order of the Court upon a *timely application* and showing of *good cause*" (emphasis added). Local Patent Rule 3.7 specifically enumerates, as a potential basis for good cause in an appropriate case, a "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contention." But even so, after "new information comes to light in the course of discovery," a party seeking to meet the "good cause" requirement must "proceed with diligence in amending those contentions." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). The purpose of these early disclosure and amendment rules is "to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *King Pharm., Inc. v. Sandoz Inc.*, No. 08-5974, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010) (quoting *Computer Accelerations Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (E.D. Tex. 2007)). The rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Id.* (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. 95-1987, 1998 WL 775115, at *2 (N.D. Cal. Nov.5, 1998)).

Magistrate Judge Hammer denied WAG's motion to amend, finding that

---

[4]     WAG also sought to amend its infringement contentions to add an additional claim. Magistrate Judge Hammer denied WAG's motion because it had not exercised due diligence in moving to amend. WAG has not specifically challenged that basis for denying its motion, and this Opinion will therefore not address it. *See Geoul Lee,* 720 F. App'x at 666.

it did not demonstrate due diligence in moving to amend its pleadings. (January 29 Op. at 17). Magistrate Judge Hammer explained that, after Duodecad served its invalidity contentions in March 2016, WAG was aware that its infringement contentions might be deficient, but nevertheless chose not to pursue any meaningful discovery in 2016. Instead it chose to rest on its original contentions, wait to serve its first set of interrogatories until January 2017, and inspect Duodecad's source code for the first time in March 2017. (*Id.* at 17). What is more, Magistrate Judge Hammer explained, after WAG discovered H5Live through inspection of Duodecad's source code, it failed to notify Duodecad of the basis for amending its infringement contentions until after the close of discovery, in September 2019. (*Id.* at 18–19).

WAG argues that Magistrate Judge Hammer's denial of its motion to amend was clearly erroneous. Judge Hammer, WAG argues, should not have faulted it for failing to pursue discovery immediately. Duodecad, it says, only began to use H5Live in or around October 2016—*after* commencement of the lawsuit and *after* Duodecad served its invalidity contentions. (WAG Br. at 2). WAG also argues it was prevented from disclosing to Duodecad the basis of its motion to amend because Judge Hammer supposedly stayed the *entire* case on September 12, 2017. (*Id.* at 5). As soon as the stay was lifted, says WAG, it promptly notified Duodecad of the basis of the motion.

Duodecad's response is three-fold. First, Duodecad argues that its having begun to use H5Live in October 2016 does not excuse WAG's failure to pursue discovery until January 2017. (Duodecad Opp. at 5–7). Second, Duodecad points out that WAG's request to amend its pleading in May 2017 *still* failed to specify the basis of the amendment; such a request, Duodecad claims, undercuts the fundamental purpose of Local Patent Rule 3.7, which is to put opposing parties on notice of the claim well in advance of trial. (*Id.* at 7). Third, the stay entered by Magistrate Judge Hammer was expressly limited to "*Markman issues*" and was not, as WAG claims, a stay of the entire case. (*Id.* at 9 (quoting Text Order, *WAG Acquisition, L.L.C. v. Multi Media, LLC*, et al., No.

14-2340, DE 159)).

Magistrate Judge Hammer's denial of WAG's motion to amend was not clearly erroneous, or indeed erroneous at all. On this record, I must uphold his ruling that WAG was neither diligent in pursuing discovery nor diligent in moving to amend its infringement contentions. As to the pursuit of discovery, WAG did not issue a single discovery request in 2016, opting instead to rest on its complaint. Although Duodecad began to use H5Live in October 2016, WAG has offered no reason for delaying pursuit of related discovery until January 2017; the knowledge that the amendment deadline had already passed should have lit a fire under any diligent party. As to the motion to amend its contentions, WAG's barebones request in May 2017 failed to put Duodecad on reasonable notice. This notification was a cipher, at best a mere placeholder that defeated the fundamental purpose of Local Patent Rules 3.6 and 3.7. WAG was required to do better, but it did not cure that deficient notice in any manner until September 2019. *See O2 Micro Int'l Ltd.*, 467 F.3d at 1362 (affirming "lack of diligence" finding where moving party waited "almost three months" after necessary deposition to "serv[e] . . . its proposed amended contentions"); *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-7025, 2017 WL 5886004, at *3 (D.N.J. Nov. 29, 2017) ("If the Court accepted plaintiffs' argument[,] plaintiffs could amend without good cause simply by serving deficient infringement contentions and waiting for their adversary to ask for a supplement.  This is unacceptable."). WAG has not demonstrated any justifiable excuse for that delay. Finally, WAG's argument that it was powerless to act because Magistrate Judge Hammer had  stayed the entire case is simply wrong. Judge Hammer did not stay all activity in the case, but expressly limited the stay to "Markman issues." (*Id.*).

This Court therefore denies WAG's claim that Magistrate Judge Hammer committed clear error in denying its motion to amend.

## IV.    Conclusion

For the foregoing reasons, the Court AFFIRMS Magistrate Judge Hammer's January 29 Order. An appropriate Order accompanies this Opinion.

Dated: August 31, 2020

/s/ Kevin McNulty

Kevin McNulty, U.S.D.J.